UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 3, 2019

LETTER TO COUNSEL

RE: *Kathline O. v. Commissioner, Social Security Administration*;
Civil No. SAG-18-3496

Dear Counsel:

On November 13, 2018, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 15, 18. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed her claims for benefits on June 1, 2015, alleging an onset date of December 21, 2013. Tr. 259-69. Her claims were denied initially and on reconsideration. Tr. 144-51, 154-57. A hearing was held on September 7, 2017, before an Administrative Law Judge ("ALJ"). Tr. 34-62. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-23. The Appeals Council declined review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that, during the relevant time frame, Plaintiff suffered from the severe impairments of "bipolar disorder; generalized anxiety disorder; osteoarthritis, left knee; degenerative joint disorder; and degenerative disc disorder." Tr. 14. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally stoop/kneel/crouch/crawl. She is limited to simple routine tasks, but not at a production rate pace with no more than an occasional change in the work setting and occasional interaction with supervisors, coworkers and the public.

Tr. 16. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work, and, in the alternative, could perform other jobs

existing in significant numbers in the national economy. Tr. 21-22. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. Tr. 22.

Plaintiff makes six primary arguments on appeal: (1) that the ALJ improperly weighed the medical evidence; (2) that the ALJ improperly ignored medical records; (3) that the ALJ's analysis of Plaintiff's limitations in concentration, persistence, or pace was flawed and runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); (4) that the ALJ's analysis of Plaintiff's limitations in interacting with others was flawed; (5) that the ALJ failed to resolve apparent conflicts between the VE testimony and the Dictionary of Occupational Titles ("DOT"); and (6) the ALJ erred at step two of the sequential evaluation when determining Plaintiff's IQ was not a severe impairment. Although most of Plaintiff's arguments lack merit, I agree that the ALJ's opinion did not comport with *Mascio*, and I therefore remand the case for further analysis.

Beginning with the successful argument, Plaintiff argues that the ALJ's RFC analysis of Plaintiff's limitations in concentration, persistence, or pace failed to comply with the requirements of *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 637-38. At step three of the sequential evaluation, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (2018). The relevant listings therein consist of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairments meet the listings relevant to this case by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

The SSA employs the "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2) (2018). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A moderate limitation signifies that the claimant has only

a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c) (2018).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In the instant case, the ALJ found that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace. Tr. 16. The ALJ's analysis stated:

> With regards to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. As with her understanding, the claimant's IQ scores suggested some deficits in concentration and maintaining pace. She required several reminders. Additionally, she struggles with anxiety. However, most of her treatment dealt with her fear of others. Her mental status examinations did not suggest significant abnormalities. The claimant's GAF scores suggest no more than moderate limitations. She was able to follow a diet. The claimant only has moderate limitation in this area.

Tr. 16 (internal citations omitted). In the RFC analysis, the ALJ included further discussion of the records cited to in the paragraph B analysis, particularly Plaintiff's 2015 consultative examination performed by Dr. Cascella. Tr. 19. The ALJ noted that Plaintiff was visibly distressed, often forgot instructions, and needed questions repeated. *Id*. Although the ALJ considered the consultative examination an anomaly, as the record otherwise suggested that Plaintiff's symptoms were generally controlled, the ALJ concluded that the consultative examination, even if consistent with Plaintiff's overall functioning, did not support more than a moderate limitation in focus or intellect. *Id*. The ALJ also noted that Plaintiff's IQ scores indicate somewhat limited cognitive functioning, and that Plaintiff forgot instructions during the IQ test and needed questions repeated. Tr. 19-20. The ALJ further noted that State consultants, Dr. Robertson and Dr. Samwel, assigned moderate limitations in performing detailed work, maintaining concentration, and working without interruption. Tr. 19-20; *see* Tr. 75, 87, 102, 119. Although Dr. Edouard opined that Plaintiff had marked limitation in concentration, the ALJ determined that Dr. Edouard's view was inconsistent with the record, which showed Plaintiff's symptoms were generally controlled. Tr. 20. The ALJ

also noted that, although GAF scores are one-time snap shots not subject to empirical verification, Plaintiff's GAF scores of 55-70 suggested no more than a mild or moderate abnormality. Tr. 21.

The restriction to "simple routine tasks" in this case is directly analogous to the limitations deemed insufficient in *Mascio*. *Mascio*, 780 F.3d at 638 (quoting *Winschel,* 631 F.3d at 1180) (finding "simple, routine tasks or unskilled work" to be insufficient to address a claimant's moderate limitations in concentration, persistence, or pace). In the absence of any additional limitation to accommodate Plaintiff's moderate difficulties maintaining concentration, persistence, or pace, *Mascio* requires that the ALJ explain why no such limitation is required. *Mascio*, 780 F.3d at 638. The ALJ has not provided such an explanation here. Without an adequate analysis provided by the ALJ on the issue of Plaintiff's limitations in concentration, persistence, and pace, I am unable to ascertain whether the RFC assessment would permit a person with Plaintiff's limitations to sustain a competitive pace, with only normal breaks. In light of this inadequacy, I must remand the case to the SSA for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

The Commissioner argues that the ALJ satisfied *Mascio* by adding the further limitation of "not at a production rate pace." The Commissioner acknowledges that the Fourth Circuit recently remanded a case for, among other reasons, a failure to define "production rate" and "demand pace," *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019), but argues that remand is not warranted here because the ALJ's inclusion of the limitation was unambiguously intended to minimize Plaintiff's stressors of anxiety, feeling overwhelmed, concentrating, and maintaining pace. ECF 18-2 at 17 n.3. For support, the Commissioner cites to *Sizemore v. Berryhill*, 878 F.3d 72, 79 (4th Cir. 2017), *Michaels v. Berryhill*, 697 F. App'x 223 (4th Cir. 2017) (unpublished), and *Crocetti v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-17-1122, 2018 U.S. Dist. LEXIS 95697 (D. Md. June 6, 2018).

In *Sizemore*, the Fourth Circuit affirmed an ALJ's denial of benefits in which the ALJ included an RFC limitation to "work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] with no public contact." *Sizemore*, 878 F.3d at 79 (alterations in original). The Fourth Circuit in *Perry* explained that the additional "descriptors" in *Sizemore* "helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations." *Perry v. Berryhill*, 765 F. App'x 869, 872 n.1 (4th Cir. 2019) (unpublished) (remanding for ALJ's failure to define "non-production oriented work setting").

Here, the RFC did not contain the "descriptors" present in *Sizemore*.[1] Rather, the RFC limitation to "simple routine tasks, but not at a production rate pace," Tr. 16, is directly analogous

---

[1] The RFC found by an earlier ALJ considering Plaintiff's case in 2013 (limiting Plaintiff to "simple, routine, and repetitive tasks in a low stress environment with no strict production quotas and only occasional interaction with others") may have fit into the *Sizemore* carveout. Tr. 17. The ALJ in 2017 gave great weight to the 2013 ALJ's decision as it relates to Plaintiff's mental functioning, Tr. 19, but did not use the same language. Instead, the language used in the 2017 opinion is directly analogous to that reflected in *Thomas*. Even if this Court could find that the ALJ's

to the RFC limitation in *Thomas* where the claimant was limited to the ability to "follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace," *Thomas*, 916 F.3d at 310. The Commissioner's citation to *Michaels v. Berryhill*, 697 F. App'x 223 (4th Cir. 2017) (unpublished), is unpersuasive, as that opinion was simply a one paragraph decision affirming the district court's judgment, and did not contain any discussion of the phrase "nonproduction pace rates."

The Commissioner further argues that this Court has previously held that a similar RFC limitation was subject to a common understanding. This Court did uphold a similar RFC provision in *Crocetti*. *Crocetti v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-17-1122, 2018 U.S. Dist. LEXIS 95697 (D. Md. June 6, 2018). Critically, however, *Crocetti* noted that, "[n]o precedent, binding or otherwise, requires an additional definition to be presented in order for a hypothetical containing the phrase 'production rate pace' to be understandable to a VE." *Id.* at *5. That position cannot be maintained in the wake of *Thomas*. Without any viable basis to distinguish the language in this case from that in *Thomas*, remand is warranted.

Plaintiff's remaining arguments are less persuasive. First, Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence. ECF 15 at 13. In particular, Plaintiff disagrees with the assignments of weight to the opinions of Dr. Fingerhood and Dr. Eduoard. In reviewing the ALJ's RFC analysis as a whole, the reasons that the ALJ offered for the assignments of weight sufficed and were supported with substantial evidence. The ALJ cited to particular examination notes from Dr. Fingerhood to support her finding that Dr. Fingerhood's opinion that Plaintiff was unable to sit for six hours or stand for two hours in an eight-hour period of time and could not lift more than ten pounds, Tr. 658, 662, was not consistent with the medical evidence.[2] Tr. 17-20. The ALJ noted that Plaintiff's left knee pain increased in 2017 and that she was evaluated for a knee replacement, but that she did not have a knee replacement, nor did the record suggest that she required a walker or was otherwise incapable of postural activities. Tr. 18. The ALJ explained that Plaintiff's knee pain was addressed in the limitation to light work. *Id*. The ALJ additionally supported her finding that Dr. Edouard's opinion was over-restrictive, because the record shows that Plaintiff's symptoms were generally controlled. Tr. 20. Next, Plaintiff argues that the ALJ failed to assign weight to the opinion of the consultative physician, Dr. Cascella. Notably, there is no requirement that each practitioner's opinion be explicitly addressed, where implicit assignments of weight can provide an opportunity for meaningful review. Here, it is clear that the ALJ considered and evaluated Dr. Cascella's opinion. Tr. 19. On remand, however, the ALJ should make an express assignment of weight.

---

opinion contained sufficient explanation of the meaning of the term, the hypothetical to the VE used only the undefined phrase.

[2] Plaintiff insists that the ALJ ignored "two out of three" of Dr. Fingerhood's medical opinion statements. Dr. Fingerhood submitted a statement dated October 2013, Tr. 657-60, and a statement dated March 2016, Tr. 661-63. In April 2017, Dr. Fingerhood resubmitted the March 2016 statement. Tr. 711-14. The ALJ expressly considered and weighed Dr. Fingerhood's "two medical assessments." Tr. 20. However, it seems that the ALJ mistyped the citation so that, instead of pointing to Dr. Fingerhood's October 2013 statement along with Dr. Fingerhood's March 2016 statement, it points to Plaintiff's pharmacy prescription history. Despite this mistake, the text clearly references both of Dr. Fingerhood's statements.

Plaintiff also challenges the weight given to a prior ALJ decision from 2013. ECF 15 at 15. The ALJ permissibly gave great weight to the 2013 ALJ's decision as it related to Plaintiff's mental functioning, and partial weight as it related to Plaintiff's physical functioning. Tr. 19. The ALJ noted that Plaintiff's mental functioning had improved since her last administrative hearing, that her symptoms were generally controlled with medication, and that Plaintiff had experienced recent physical restrictions that did not exist at the time of the prior ALJ decision.[3] Tr. 17, 19.

Plaintiff further argues that the ALJ ignored over 80 pages of medical records, and asserts that the ALJ would have given Dr. Fingerhood's opinion controlling weight had she considered those medical records. ECF 15 at 18-22; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c) (a treating source opinion that is not inconsistent with other evidence in the record may be entitled to controlling weight). Plaintiff's argument fails because an ALJ is not required to discuss every piece of evidence in the record, *see Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), and because the ALJ here did expressly discuss some of the alleged ignored evidence, Tr. 20. The ALJ supportably found that Dr. Fingerhood's opinion was more restrictive than evidenced by the record, including Dr. Fingerhood's own treatment notes. Tr. 18-20.

Next, Plaintiff attempts to apply the relevant reasoning of *Mascio* to the paragraph B area of interacting with others, suggesting that a specific RFC restriction is required to address the moderate limitation. ECF 15 at 26. However, the ALJ limited Plaintiff to "occasional interaction with coworkers, supervisors, and the public." Tr. 16. That limitation is consistent with the ALJ's earlier finding of a moderate limitation in interacting with others, Tr. 15, and Plaintiff has not successfully argued that the ALJ's analysis supporting that finding was inadequate. Additionally, Plaintiff's argument that "Occasional interaction with others cannot be done on a sustained basis" is logically flawed. ECF 15 at 28. The DOT and other relevant sources clearly contemplate that some jobs require some tasks to be performed on a less-than-continuous basis, and there is no error in finding a claimant capable of an activity on an "occasional" or "frequent," rather than "constant," basis. The overall job must be performed eight hours per day, five days per week, but each individual task need not.

Plaintiff also argues that the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT. ECF 15 at 28-31. The ALJ is required to address any conflicts or apparent conflicts between the VE's testimony and the information contained in the DOT. *See Pearson v. Colvin*, 810 F.3d 204, 208-10 (4th Cir. 2015) ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). Plaintiff's argument that the ALJ should have elicited more explanation regarding how an individual with Plaintiff's RFC could perform her past relevant work of food deliverer is misguided, because the VE explicitly testified that Plaintiff could continue to perform the work of food deliverer "as [Plaintiff] had performed" the job, and not as it is performed generally in the national economy. Tr. 59; *see* SSR 82-61, 1982 WL 31387, at *2 ("[W]here the

---

[3] Plaintiff additionally argues that the ALJ's decision is unreviewable because neither the 2013 nor 2017 ALJ decision defined "partial," "moderate," or "substantial" weight. Plaintiff cites no precedent for such an argument. In any event, the ALJ provided sufficient explanation for the weight she assigned.

evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled'").

Plaintiff further argues that the ALJ failed to resolve the apparent conflict between Plaintiff's RFC limitation to "simple routine tasks," and the required Reasoning Levels for the jobs identified by the VE. The VE identified three jobs in response to the ALJ's hypothetical: mail clerk (DOT code 209.687-026), photocopy machine operator (DOT code 207.685-014), and housekeeper/cleaner (DOT code 323.687-014). Tr. 22. According to the DOT, the mail clerk position requires a Reasoning Level of 2, and the photocopy machine operator position requires a Reasoning Level of 3. U.S. Dep't of Labor, *Dictionary of Occupational Titles* §§ 209.687-026, 207.685-014 (4th ed. 1991). The Fourth Circuit has held that an apparent conflict exists between a limitation to "short, simple instructions" and the requirement of Reasoning Level 2 jobs to carry out "detailed but uninvolved instructions." *Thomas v. Berryhill*, 916 F.3d 307, 313-14 (4th Cir. 2019); DOT 209.587-034, 1991 WL 671802; *see also Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018) (unpublished) (finding apparent conflict between limitation to short and simple instructions and Reasoning Level of 3). However, the Commissioner is correct that any error is harmless, because the third representative occupation of housekeeping requires only a Reasoning Level 1. DOT § 323.687-014. A claimant is not disabled if she is able to engage in "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). Thus, even though the ALJ failed to resolve an apparent conflict regarding the other two occupations, that error was harmless, because the other identified occupation of housekeeping (with 247,000 jobs nationally), Tr. 22, 60, exists in significant numbers. *See Lawler v. Astrue*, Civil Action No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that where only 75-100 jobs existed in the region where plaintiff lived did "not undermine the ALJ's conclusion that plaintiff [was] capable of performing work that exists in significant numbers in the national economy.") (citing *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number)). However, on remand, the ALJ can consider revising any step-five analysis, which may include eliciting an explanation from a VE regarding an apparent conflict, such as that identified in *Thomas*, 916 F.3d at 313-14.[4]

Finally, Plaintiff argues that the ALJ erred at step two by finding that Plaintiff's full scale IQ of 74 was not a severe impairment. The ALJ cited evidence of Plaintiff's IQ and its potential effects on her ability to understand, remember, or apply information, and on her concentration, persistence, and pace. Tr. 15-16. The ALJ additionally noted that, although her IQ scores "indicate somewhat limited cognitive functioning," Plaintiff's treatment records did not suggest low functioning, nor has a medical provider diagnosed Plaintiff with a disability related to her

---

[4] The Commissioner attempts to distinguish *Thomas* by drawing a distinction between limitations to simple "instructions" and limitations to simple "tasks." ECF 18-2 n.4. Ultimately, because this case is being remanded on other grounds, the Court need not decide if the limitation to "simple, routine tasks" is analogous to the limitation in Thomas to "short, simple instructions." 916 F.3d at 313.

intellectual functioning. Tr. 20. Accordingly, I find that the ALJ adequately supported her finding that Plaintiff's IQ was not a severe impairment.[5]

      For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 15, is DENIED and Defendant's Motion for Summary Judgment, ECF 18, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as an opinion. A separate order will issue.

                         Sincerely yours,

                         /s/

                         Stephanie A. Gallagher
                         United States Magistrate Judge

---

[5] To the extent Plaintiff contends that any IQ less than 80 is a per se severe impairment under Social Security law, she is incorrect. Plaintiff cites to Social Security Ruling ("SSR") 82-54 for support. However, SSR 82-54 did not state such a rule; it merely stated that an IQ of 80 or greater is considered not severe. SSR 82-54, 1982 WL 31381. Furthermore, SSR 82-54 was rescinded in 1993 to "reflect advances in medical knowledge, treatment and methods of evaluating mental disorders and provide up-to-date medical criteria for the evaluation of disability claims based on mental disorders." 58 F.R. 16545-01, 1993 WL 88035.